# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| DAVID A. THOMAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:25-cv-01336 |
| | ) | |
| ARCH GLOBAL PRECISION, LLC | ) | |
| d/b/a ARCH CUTTING TOOLS | ) | |
| NASHVILLE, LLC (formerly BMWG, | ) | |
| LLC), | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Before the Court is Arch Global Precision, LLC d/b/a Arch Cutting Tools Nashville, LLC's

(formerly BMWG, LLC) ("Arch Global") Motion to Dismiss (Doc. No. 14), which has been fully

briefed and is ripe for decision. (Doc. Nos. 15, 18, 20). For the following reasons, the motion will

be granted.

## I. BACKGROUND AND FACTUAL ALLEGATIONS[1]

David Thomas worked for BMWG, LLC ("BMWG"), a cutting tools business, for 18 years.

(Doc. No. 1 at ¶ 8). Thomas acted as "second in charge," which involved training employees and

performing other critical functions, including engineering, programming, and design tasks. (Id. at

¶¶ 8, 10). His contributions increased BMWG's revenue and helped BMWG expand to construct

a third building and acquire new machinery. (Id. at ¶¶ 8–9). In May 2022, Travis Wright, an

employee of BMWG, told Thomas that if BMWG was ever sold, he "would receive compensation

---

[1] The Court relies upon the factual allegations in the Complaint, assumes the truth of those allegations, and construes them and reasonable inferences from them in the plaintiff's favor for purposes of ruling on the motion to dismiss. See, e.g., Erickson v. Pardus, 551 U.S. 89, 94 (2007).

sufficient that he would 'never have to work again.'" (Id. at ¶¶ 11, 48).  Wright and Thomas agreed "that they were in it together and for the long haul." (Id. at ¶ 13).  These promises induced Thomas to stay with BMWG.  (Id. at ¶ 12).

Twenty-two months after Wright's representations, BMWG was sold to Arch Global in March 2024.  (Id. at ¶ 14).  Thomas did not receive any of the compensation when Arch Global took control.  (Id. at ¶ 15).  His employment continued under Arch Global, even though he accepted a title change "that diminished his status and credit while benefitting" Arch Global.  (Id. at ¶ 16).  Thomas alleges that he was "constructively discharged" but he does not say when or why that occurred.  (Id. at ¶¶ 45, 46, 47).  He alleges over $30,000.00 in lost employment benefits and pay, in addition to not receiving any of the sale proceeds when BMWG was sold.  (Id. at ¶ 21).  Thomas filed suit against Arch Global, asserting claims for breach of contract, promissory estoppel, unjust enrichment/quantum meruit, declaratory/alternative equitable relief regarding partnership/ownership interest, and constructive discharge in violation of Tennessee law.  (Doc. No. 1 at 5–8).

## II.  LEGAL STANDARD

 "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Cooperrider v. Woods, 127 F.4th 1019, 1027 (6th Cir. 2025) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007))).  When assessing a Rule 12(b)(6) motion to dismiss, the Court must accept the well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor.  Doe v. Baum, 903 F.3d 575, 581 (6th Cir. 2018).  Then, the Court must "take all of those facts and inferences and determine whether they plausibly give rise to an entitlement to relief."  Id. (internal citations omitted).  "While the complaint 'does not need detailed factual allegations, a plaintiff's obligation to provide the grounds

2

of his entitlement to relief requires more than labels and conclusions'" or "'a formulaic recitation of a cause of action's elements[.]'" <u>Ryan v. Blackwell</u>, 979 F.3d 519, 524 (6th Cir. 2020) (quoting <u>Twombly</u>, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." <u>Twombly</u>, 550 U.S. at 555 (internal citation omitted).

III.    <u>ANALYSIS</u>

As a threshold issue, Arch Global argues that it is not a proper party to any of the claims other than constructive discharge because Thomas relies on promises that Wright made when he was employed by BMWG. (Doc. No. 15 at 4–5). Thomas responds that under Tennessee law, he has adequately pled "successor liability" between BMWG and Arch Global. (Doc. No. 18 at 4–6).

The general rule is that a successor company does not become automatically liable for the obligations of the company it purchases. <u>Signature Combs, Inc. v. United States</u>, 331 F. Supp. 2d 630, 640 (W.D. Tenn. 2004). However, there are circumstances in which a successor will be liable. "In determining the existence of successor liability, a plaintiff must first show that a transfer of assets has taken place. Then, the plaintiff must allege a state law exception to the general rule regarding successor liability." <u>Carrier Corp. v. Piper</u>, 460 F. Supp. 2d 827, 845 (W.D. Tenn. 2006) (citations omitted). The four exceptions to the general rule regarding successor liability are:

> (1) where the purchasing corporation expressly or implicitly agrees to assume the selling corporation's liabilities; (2) where the transaction amounts to a consolidation or merger of the two corporations; (3) where the purchasing corporation is a mere continuation of the selling corporation; and (4) where the transaction is entered into fraudulently, in order to escape liability for the obligations of the selling corporation.

<u>Layne Christensen Co. v. City of Franklin, Tennessee</u>, 449 F. Supp. 3d 748, 756 (M.D. Tenn. 2020) (applying Tennessee law).

3

Thomas alleges only the legal conclusion that Arch Global bought BMWG and "is responsible for, or succeeded to, the obligations relating to the promised sale-proceeds compensation by Travis Wright" to Thomas. (Doc. No. 1 at ¶¶ 7, 14). He relies on the second and third exceptions to the general rule regarding successor liability: de facto merger and "mere continuation." (Doc. No. 18 at 4–6). Thomas fails to allege any facts to support his legal conclusion that Arch Global "is responsible for, or succeeded to" BMWG's obligations. (Doc. No. 1 at ¶ 7). Critically, he does not allege that BMWG was "sold" to Arch Global as a transfer of assets or otherwise. (See Doc. No. 1 at ¶ 14).

Even if Thomas had plausibly pled a transfer of assets, he fails to allege facts to plausibly satisfy any exception to the general rule regarding successor liability. The de facto merger exception occurs when there is a sale of one corporation's assets in exchange for the stocks and bonds of another corporation. IBC Mfg. Co. v. Velsicol Chem. Corp., 187 F.3d 635 (6th Cir. 1999) (citing Jennings Neff & Co. v. Crystal Ice Co., 159 S.W. 1088, 1089–90 (Tenn. 1913)). Thomas does not allege that BMWG sold any of its assets in exchange for Arch Global's stocks and bonds. The next exception Thomas relies on, "mere continuation," applies if "(1) a corporation transfers its assets; (2) the acquiring corporation pays less than adequate consideration for the assets; (3) the acquiring corporation continues the previous corporations business; (4) both corporations share at least one common officer who was instrumental in the transfer; and (5) the previous corporation is left incapable of paying its creditors." Layne Christensen, 449 F. Supp. 3d at 758. At most, taking all inferences in Thomas' favor, he may plausibly allege the third element—i.e., that Arch Global continued BMWG's business. Yet, he does not allege that the other elements are satisfied. Thomas has not plausibly pled that successor liability attaches to Arch Global. Accordingly, all

4

of Thomas's claims that are based on Wright's actions before BMWG was sold to Arch Global must be dismissed.  The Court will address the only remaining claim, constructive discharge.

Under the doctrine of constructive discharge, some resignations are treated, in substance, as terminations. Lemon v. Williamson Cnty. Schs., 618 S.W.3d 1, 13 (Tenn. 2021) (citing Walker v. City of Cookeville, No. M2002-01441-COA-R3-CV, 2003 WL 21918625, at *7 (Tenn. Ct. App. Aug. 12, 2003) (citations omitted)).  There are two types of constructive discharge.  See id. at 1 n.8.  The first occurs "when an employer permits a hostile working environment to render an employee's working conditions so intolerable that resignation is the employee's only reasonable alternative." Id.  This type of constructive discharge claim is not a standalone cause of action. Id. at 14.  Instead, "it is a court-created doctrine applied to prevent employers from circumventing certain remedial statutes" and that "allows an employee who voluntarily quit his or her employment to satisfy the element of termination in an otherwise viable underlying claim." Id. (first citing Phillips v. Interstate Hotels Corp., 974 S.W.2d 680, 687 (Tenn. 1998) (discrimination case brought under the Tennessee Human Rights Act ("THRA")); and then citing Crews v. Buckman Lab'ys Int'l, Inc., 78 S.W.3d 852, 865 (Tenn. 2002) (case involving claim of common-law retaliatory discharge)).

The second type of constructive discharge involves demotion of an employee who has "a position-specific contract," which is "breached when an employer reduces [the] employee to an inferior status." Walker, 2003 WL 21918625, at *7.  This second variety is "distinguishable from cases where an at-will employee claims constructive discharge based upon a hostile work environment, discrimination, or some non-feasance on the part of the employer." Guiliano v. Cleo, Inc., 995 S.W.2d 88, 94 (Tenn. 1999) (citations omitted).

Thomas attempts to state a claim for both varieties of constructive discharge, arguing that he was subject to a hostile work environment and a change in status and title. (See Doc. No. 1 at ¶ 41; Doc. No. 18 at 13–14). He does not plausibly allege facts to support either. First, Thomas does not anchor his constructive discharge claim in an underlying statute, such as the THRA, nor does he make anything more than conclusory allegations of retaliatory discharge or hostile work environment. Second, Thomas alleges that he was an at-will employee. (Doc. No. 1 at ¶ 40). The employment-at-will doctrine "applies in the absence of a contract of employment, and it means that an employment relationship generally can be terminated by either the employer or the employee with or without cause." Cantrell v. Knox Cnty. Bd. of Educ., 53 S.W.3d 659, 662 (Tenn. 2001). Thomas had no contractual right to any position, so his constructive discharge claim has no legal basis. This claim will be dismissed.

Lastly, Thomas requests leave to amend the Complaint should the Court determine any of his allegations are insufficient. (Doc. No. 18 at 14–15). This request is denied. The proper vehicle for such a request is a motion to amend. See Kuyat v. BioMimetic Therapeutics, Inc., 747 F.3d 435, 444 (6th Cir. 2014) ("A request for leave to amend almost as an aside, to the district court in a memorandum in opposition to the defendant's motion to dismiss is . . . not a motion to amend.").

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE

6